## Young v. Commonwealth.

(Decided May 17, 1927.)

Appeal from Jefferson Circuit Court
(Criminal Division).

1. Witnesses.—In prosecution for storehouse breaking, permitting questions whether accused had pointed gun at witness, whose store had been broken into on another occasion, and threatened him, and question insinuating that fact could not be proved, because witness was afraid of accused, and attempt to prove prejudicial fact against accused, by proving that witness had stated to an officer that such was the fact, held prejudicial error, under Civil Code of Practice, section 597, relating to impeachment of witness.

2. Criminal Law.—Court's admonition held not to cure error of admitting incompetent testimony regarding whether accused had pointed gun at witness on another occasion, from which improper insinuations and inferences would be drawn.

ROBERT HUBBARD for appellant.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—Reversing.

Appellant was convicted in the criminal division of the Jefferson circuit court of the crime of storehouse breaking, and sentenced to one year's confinement in the state penitentiary. The appeal is from that judgment.

Ivan Estes was operating a pool room and soft drink stand at 4441 Louisville avenue, in the city of Louisville. On the night of March 23, 1926, he closed his place of business at 11 o'clock, and later that night it was broken and entered, and 4 cartons of Camel cigarettes, 3 of Chesterfield's, 3 boxes of cigars, 12 pounds of Day's Work chewing tobacco, one pound of Star tobacco, one 7-jewel Elgin watch, one pocket knife, one used Eversharp pencil, and about 5 pounds of Appell's chewing tobacco were stolen.

This was discovered the next morning and reported to officials. Some time that day Patrolman John Amiss arrested appellant, as he testified, for vagrancy. He had no warrant of arrest for him, and the record does not establish that appellant was then committing any offense in his presence. He searched appellant, and testified that he found on him three 20-cent cuts of Day's Work tobacco, 2 packages of Camel cigarettes, 3 packages of Chesterfield's, and an Eversharp pencil. No objection was offered to this testimony. There was introduced in evidence one plug of Day's Work chewing tobacco and the Eversharp pencil, which the officer testified he found on appellant's person. He testified that after searching him, he returned to appellant the cigarettes and the other chewing tobacco.

Appellant testified that when he was arrested he had only a portion of a package of Camel cigarettes, and that the officer found no others on him, and that the officer did not take from him the plug of Day's Work chewing tobacco introduced in evidence, and no other witness testified as to the cigarettes and tobacco found on appellant's person by the officer. The officer took appellant to Estes' place of business, and he identified the pencil taken from appellant by the officer as his own, claiming to be able to do so by a dent in it. When Estes stated that the pencil was his, appellant immediately denied that fact, and stated that it was a pencil he had bought some two months previously. After Estes stated the pencil found on appellant was the one that had been stolen from his place of business, the officer carried appellant to a nearby telephone to call the patrol wagon, and while he was doing so appellant ran. The officer pursued him, and shot him down with a pistol, thus preventing the escape. Appellant's leg was broken by the shot, and he was carried to the City Hospital, and remained there for some time and until he recovered. The officer testified that he went to the hospital a day or two later to procure the cigarettes and the other tobacco, which he found on appellant when he searched him, but learned that they had been destroyed because, when taken to the hospital, appellant had a case of measles. Affidavits filed by appellant in support of his motion and grounds for a new trial upon the ground of newly discovered evidence tend to establish that such was not the fact, and that those who undressed him and disposed of his belongings would state that he did not have

the articles indicated on his person when brought to the hospital. ·  .

.     Appellant's defense was an alibi, and some five or six witnesses testified for him, and accounted for his being elsewhere at the time the burglary was committed. A young lady on whom he had called that evening and her mother testified that he was at their home from about 7 until 9:30 o'clock, and left them because he was sick and had broken out with measles. He was boarding with Mrs. Bettie Rigdon, and shortly after leaving the young lady's home fell in with Wash Rigdon, one of her sons, and they together immediately went home. He and Wash Rigdon then retired and occupied the same bed. Mrs. Rigdon and another one of her sons occupied another bed in the same room. All of them testified that it was only a few moments after 10 o'clock when they retired, and that appellant did not leave their home after that time. Appellant explained the circumstance of his running from the officer by stating that it was the first time he had been arrested, and when the officer was telephoning for the patrol wagon he realized that they were about to take him to jail, and he became frightened and ran. A number of witnesses testified that he had been carrying a pencil like that in evidence for some time before the house was broken. From the foregoing it will be observed that the case against appellant is founded entirely upon the identification of a used Eversharp pencil and the circumstance that he ran after having been put under arrest.

While appellant was being cross-examined by the attorney for the commonwealth, he was asked if he knew Owen Brown, who had operated the pool room before Mr. Estes took it, and stated that he did. He was then asked:

"Tell the jury whether or not it is a fact that, when Mr. Owen Brown was up at this same place of business, if you did not point a pistol against his stomach."

Appellant's objection to the question was overruled, and he stated that he did not. He was then asked.

"I will ask you if it is not a fact that you pointed a pistol, and put it close to Mr. Brown's stomach, and said to him these words: 'If you ever tell this, you God damn old son of a bitch, I will kill you.'"

The objection to this question was overruled, and appellant was required to answer, and stated: "No, sir; I did not." After the testimony for appellant was all in, Owen Brown was introduced as a witness, and the following is quoted from the transcript of testimony to show what occurred:

"Q. I will ask you this question: In that place of business, before March, 1926, some several months, if occasion arose by which this defendant, Herbert Young, pointed a pistol, thrust it into your stomach, and used these words, or their substance, 'If you ever say anything about this, I will blow your heart out, you God damn old son of a bitch?' (Objected to; objection overruled; to which defendant excepts). A. He had one—

"The Court: Did he make that statement? A. No, sir; I don't remember it; I couldn't swear to it; if he made those words, I don't recollect it.

"Q. What was the words? (Objected to; objection overruled; to which defendant excepts.)

"Q. I will ask you if he did point a gun at you and threaten you? A. I will tell you; I can't recollect whether he did or not. I know he had one pawned there, and he came and got it.

"Q. You are not afraid of this fellow, are you? A. No, sir; I am not afraid.

"Q. I will ask you to answer this question, you can answer it yes or no, whether or not this man, Herbert Young, pointed a pistol at you and threatened you in that place up there before March? (Objected to; objection overruled; to which defendan' excepts). A. I can't recollect of him saying that; I wouldn't swear to something I couldn't tell you just the fact.

"Q. Didn't you tell this officer, and didn't you tell others, that this fellow came in the pool room and got your property and got things from you? (Objected to; objection sustained.)

"Q. I will withdraw that question. Is it not a fact that you told this officer in the presence of others that this defendant in your place of business put a pistol against your stomach on an occasion, and told you that, if you ever said anything about this, 'I will shoot your God damn heart out,' or words to that

effect? (Objected to; objection overruled; to which defendant excepts.)

"The Court: Answer the question, whether you did or not. A. I don't recollect it; that has been right smart while; I can't tell you.

"The Court: Stand down."

After the commonwealth had concluded its testimony in rebuttal, as shown by the transcript of evidence, the court made the following remarks to the jury:

"The Court: In regard to the question asked by the comonwealth's attorney of the defendant, as to whether he had pointed a pistol at the witness, who afterward appeared, and had threatened him prior to the time this alleged offense was committed, the implication contained in that question is not to be considered by you, gentlemen of the jury, for it is unproven. If it had been proved, it could only have been considered by you as affecting the state of the mind of the defendant at the time of his arrest, as to whether he was timid or frightened at being arrested, or whether he had ever been in any sort of trouble; in other words, as bearing on the question of his state of mind at that time, and as to whether he was acting under fear or timidity, or other emotions of that kind. However, as the allegation is wholly unproved, you will dismiss that entirely from your minds, and not consider it in this case for any purpose."

Section 597 of our Civil Code of Practice expressly provides that a witness may not be impeached by evidence of particular wrongful acts, except that it may be shown that he has been convicted of a felony. It has uniformly been held by this court that, upon the trial of one charged with crime, it is incompetent and prejudicial to introduce evidence of other offenses committed by him, with certain limited exceptions, pointed out in Kirby v. Commonwealth, 206 Ky. 535, 267 S. W. 1094. The facts here sought to be proved against appellant, and the circumstances under which they were sought to be proved, did not bring this within any of the exceptions. Whether by intent or misdirected zeal, this incident of the trial was most prejudicial to the rights of appellant. The admonition of the court to the jury discloses that he had an erroneous conception of the law. To prove the fact in the first instance would have been incompetent and prejudi-

cial. The insinuation to be found in the questions propounded by the attorney for the commonwealth to the witness Brown, that the fact could not be proved because the witness was afraid of appellant, was wholly improper and prejudicial. The matter did not stop there, however. The attorney for the commonwealth then sought to prove the prejudicial fact against appellant by proving that the witness had stated to an officer that such was the fact.

It is impossible to conclude that the court's admonition removed from the minds of the jurors all of this incompetent testimony, and the improper insinuations and inferences to be drawn therefrom, as they had been presented. In view of the uncertainty of appellant's guilt, from the competent evidence herein as a whole, we can but conclude that this incident of the trial played a large part in leading the jury to the verdict returned, and hence that it was prejudicial.

In view of that conclusion, it is unnecessary to discuss and determine whether or not the trial court erred in overruling appellant's motion for a new trial upon the ground of newly discovered evidence and the question presented whether the verdict is flagrantly against the evidence will be reserved.

Judgment reversed, and cause remanded for other proceedings consistent herewith.